UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE NORTHEAST CARPENTERS HEALTH, PENSION, ANNUITY, APPRENTICESHIP, and LABOR MANAGEMENT COOPERATION FUNDS,<br><br>Petitioners,<br><br>-against-<br><br>PRECISION ENTERPRISE OF NY INC.,<br><br>Respondent. | 20 CV _____<br><br>**PETITION TO CONFIRM AN ARBITRATION AWARD** |

Petitioners, Trustees of the Northeast Carpenters Health, Pension, Annuity, Apprenticeship, and Labor Management Cooperation Funds ("Petitioners" and/or the "Funds") by and through their attorneys, Virginia & Ambinder, LLP ("V&A"), as and for their Petition to Confirm an Arbitration Award, respectfully allege as follows:

## NATURE OF THE ACTION

1. This is an action under section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1132(a)(3); section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185, to confirm and enforce an Arbitrator's Award rendered pursuant to a series of collective bargaining agreements between the North Atlantic States Regional Council of Carpenters f/k/a the New England Regional Council of Carpenters ("Union") and Precision Enterprise of NY Inc. ("Respondent").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367, and 29 U.S.C. §§ 185 and 1132(e)(1).

3. Venue is proper in this Court pursuant to 29 U.S.C. § 1132(e)(2) because the ERISA Funds (as defined below) are administered in this district.

## THE PARTIES

4. Petitioners Trustees of the Northeast Carpenters Health, Pension, Annuity and Apprenticeship Funds (the "ERISA Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with ERISA. The Trustees are fiduciaries of the ERISA Funds within the meaning of section 3(21) of ERISA, 29 U.S.C. § 1002(21). The ERISA Funds maintain their principal place of business at 270 Motor Parkway, Hauppauge, New York 11788.

5. Petitioners Trustees of the Northeast Carpenters Labor Management Cooperation Fund (the "Labor Management Fund") are employer and employee trustees of a labor management cooperation committee established under section 302(c)(9) of the LMRA, 29 U.S.C. § 186(d)(9). The Labor Management Fund maintains its principal place of business at 270 Motor Parkway, Hauppauge, New York 11788.

6. Respondent is a domestic business corporation incorporated under the laws of the State of New York. At relevant times, Respondent was an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an employer in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142. Respondent maintains its principal place of business at 847 North Chodikee Lake Road, Highland, New York, 12528.

## THE ARBITRATION AWARD

7. On or about November 16, 2010, Respondent executed an agreement (the "International Agreement") with the United Brotherhood of Carpenters and Joiners of America (the "UBCJA"). A copy of the International Agreement is annexed hereto as **Exhibit A**.

8. The International Agreement provides that "[t]his Agreement shall be effective as of the below execution date and shall remain in effect for three (3) years from that date, and it shall automatically renew itself for subsequent three-year periods unless written notice to terminate is given by either party to the other by registered or certified mail not more than ninety (90), and not less than sixty (60), days prior to is expiration or the expiration date of any subsequent renewal period." Ex. A, Art. VIII.

9. Upon information and belief, neither the UBCJA nor Respondent provided written notice to terminate the International Agreement. Respondent therefore remains bound to the International Agreement.

10. Pursuant to the International Agreement, Respondent agreed to pay "annuity, pension, and/or health and welfare contributions for an employee's work in each locality …in such amounts as are identified in the applicable collective bargaining agreement for that locality." *See* Ex. A, Article II. 11. The relevant agreement covering the work performed by the Respondent in the jurisdiction of the North Atlantic States Regional Council of Carpenters is the July 1, 2011 through May 31, 2016 Southeast Region Agreement (the "2011-16 CBA"). A copy of the 2011-16 CBA is annexed hereto as **Exhibit B**.

11. Respondent is also member of the Construction Contractors Association (the "Association"). A copy of the list of the Contractor Members Signatory to North Atlantic States Regional Council of Carpenters as of February 10, 2016 is annexed hereto as **Exhibit C**.

12. Accordingly, by way of executing the International Agreement and as a member of the Association, Respondent also became bound to the July 1, 2016 through April 30, 2019 Southeast Region Agreement (the "2016-19 CBA") and the May 1, 2019 through April 30, 2022 Southeast Region Agreement (the "2019-22 CBA") (together with the 2011-16 CBA and the 2016-

19 CBA "the CBAs") entered into between the Association and the Union. Copies of the 2016-19 CBA and 2019-22 CBA are annexed hereto as **Exhibit D** and **Exhibit E**.

13. The CBAs require Respondent, *inter alia*, to make contributions to the Funds for all work performed within the trade and geographical jurisdiction of the Union ("Covered Work"). Ex. B. Art. Sixteen, Section (a); Ex. D. Art. Sixteen, Section (a); Ex. E. Art. Sixteen, Section (a).

14. The CBAs further provide that the Employer agrees that it is bound by and shall comply with the Agreements and Declarations of Trust and the Plans or other associated documents adopted by and governed by the Funds Ex. B. Art. Sixteen, Section (a); Ex. D. Art. Sixteen, Section (a); Ex. E. Art. Sixteen, Section (a).

15. The Trustees of the Funds established an Employer Contribution Audit and Collection Policy ("Collection Policy"). A copy of the Collection Policy is attached hereto as **Exhibit F**.

16. The Collection Policy defines "contributions" as the monetary contributions due to the Funds plus the supporting remittance report, shop report, or weekly payroll report. Ex. F, Art. 2.1(A).

17. The CBAs and the Collection Policy provide that the Funds have the right to audit an employer's books and records to determine whether it complied with its obligation to remit contributions to the Funds. Ex. B. Art. Sixteen, Section (f); Ex. D. Art. Sixteen, Section (f); Ex. E. Art. Sixteen, Section (f); Ex. F. Art. 1.1, (C) (2-3).

18. The Collection Policy provides that, in the event an employer fails to remit contributions to the Funds, the matter shall be sent to arbitration before the Funds' designated arbitrator. Ex. F, Art. 2.3(A).

19. The CBAs and the Collection Policy state that the employer shall be liable for all costs incurred in collecting the delinquent contributions, including without limitation interest, liquidated damages, attorneys' fees, audit costs, and arbitration fees. Ex. B. Art. Sixteen, Section (b); Ex. D. Art. Sixteen, Section (b); Ex. E. Art. Sixteen, Section (b); Ex. F. Art. (6.3).

20. Pursuant to the Collection Policy, interest on delinquent contributions is to be calculated at the minimum rate of 0.75% per month, compounded. Ex. F, Art. 2.1(D).

21. The Collection Policy provides that, "[l]iquidated damages shall be calculated from the Due Date and shall become due and owing if suit is commenced. The amount of the liquidated damages shall be 20% of the delinquent Contributions." Ex. F, Art. 6.1.

22. A dispute arose when an audit of Respondent covering January 1, 2015 through September 23, 2018 revealed that Respondent failed to remit contributions in the principal amount of $100,607.43.

23. Pursuant to the Collection Policy, Petitioners initiated arbitration before the designated arbitrator, J.J. Pierson. Petitioners noticed said arbitration by mailing a Notice of Intent to Arbitrate Delinquency to Respondent by Certified Mail. A copy of the Notice of Intent to Arbitrate Delinquency is attached hereto as **Exhibit G**.

24. Thereafter, the arbitrator held a hearing and rendered his award, in writing, dated October 26, 2020, determining said dispute (the "Award"). A copy of the Award is attached hereto as **Exhibit H**.

25. Pursuant to the Award, the arbitrator found that Respondent violated the CBAs when it failed to remit all required contributions to the Funds, and ordered Respondent to pay the Funds the sum of $167,722.06, consisting of the principal sum of delinquent contributions of

$100,607.43, plus interest thereon of $34,204.39, liquidated damages of $20,121.49, audit costs of $11,038.75, attorneys' fees of $950, and the arbitrator's fee of $800.  *See* Ex. H.

26. The Award has not been vacated or modified and no application for such relief is currently pending.

27. This petition is timely as it was filed within the one-year statute of limitations applicable to a petition to confirm an arbitrator's award.

28. Petitioners are entitled to the reasonable attorneys' fees and costs expended in this matter pursuant to the Award, the CBAs, and the Collection Policy.  *See* Ex. B, Art. Sixteen, Section (b); Ex. D, Art. Sixteen, Section (b); Ex. E, Art. Sixteen, Section (b); Ex. F. 1.1(C) (4-5) and Art. 6.1-6.3.

29. Copies of V&A's contemporaneous time records, reflecting all time spent and all activities performed in the prosecution of this matter by its attorneys and staff, are attached hereto as **Exhibit I**.

30. I, Marlie Blaise ("MB" in the accompanying billing records) am a 2018 graduate of Florida State University College of Law and an associate at V&A.  My primary practice area is the representation of multiemployer employee benefit plans in ERISA litigation.  V&A billed my time at a rate of $275 per hour.

31. Nicole Marimon ("NM" in the accompanying billing records), is a 2014 graduate of Fordham University School of Law, and a partner at V&A.  Since graduating law school and being admitted to the New York State bar, Ms. Marimon has handled the prosecution of and served as lead counsel on numerous ERISA collections actions.  V&A billed Ms. Marimon's time at a rate of $350 per hour.

32. V&A billed the legal assistants' time at a rate of $120 per hour for work performed in connection with this action.

33. In my experience, the foregoing hourly rates are similar to or lower than the rates typically charged by attorneys of commensurate skill and experience in similar actions in the Southern and Eastern Districts of New York.

34. V&A's total billings in this matter amount to $1,757.50 reflecting 6.2 hours of work. *See* Ex. I.

35. In addition, V&A will also advance $473 in court filing and service fees and postage upon the filing of the instant petition.

36. Accordingly, Petitioners are entitled to recover $2,230.50 in attorneys' fees and costs incurred in connection with this matter.

37. A Proposed Judgment is attached hereto as **Exhibit J**.

**WHEREFORE,** Petitioners respectfully request that this Court:

1. Confirm the Award in all respects;

2. Award judgment in favor of Petitioners and against Respondent in the amount of $167,722.06 pursuant to the Award;

3. Award judgment in favor of the Petitioners and against Respondent in the amount of $2,230.50 in attorneys' fees and costs arising out of this petition; and

4. Award Petitioners such other and further relief as is just and proper.

Dated: New York, New York  
       November 18, 2020

Respectfully submitted,

**VIRGINIA & AMBINDER, LLP**

By: /s/ Marlie Blaise  
Marlie Blaise, Esq.  
Nicole Marimon, Esq.  
40 Broad Street 7th Floor

New York, New York 10004  
Tel: (212) 943-9080  
Fax: (212) 943-9082  
*Attorneys for Petitioners*